IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 02-20165-D/P |
| | ) |
| ALVIN IRWIN MOSS, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION OF DEFENDANT ALVIN IRWIN MOSS TO VACATE THE MAY 28, 2004 ORDER DIRECTING DEFENDANT TO REPATRIATE AND DEPOSIT FUNDS; AND AMENDING THE MAY 28, 2004 ORDER DIRECTING DEFENDANT TO REPATRIATE AND DEPOSIT FUNDS (DKT. # 354)**

Before the Court is the motion of Alvin Irwin Moss ("Moss" or "Defendant") to vacate the May 28, 2004 Order Directing Defendant To Repatriate And Deposit Funds ("Order"). Defendant asserts that the Court should vacate the Order because 1) the Court dismissed all claims of money laundering asserted against Defendant, 2) the Racketeer Influenced and Corrupt Organizations Act ("RICO") does not provide for repatriation, and 3) under the facts of this case, RICO does not authorize the pretrial restraint of the Gibraltar Accounts. For the following reasons, the Court **DENIES** in part and **GRANTS** in part Defendant's motion to vacate the Order.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On May 8, 2002, the United States returned an 89-count Indictment against Defendant. The Indictment charged Defendant with violations of 18 U.S.C. § 1962(c) (substantive criminal offenses pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO")), 18 U.S.C. § 1962(d) (RICO conspiracy), 18 U.S.C. § 1956(a)(2) (money laundering), and 18 U.S.C. § 1341 (mail fraud).

Defendant resided in Costa Rica at the time the Indictment was returned. On April 16, 2004, Costa Rica ordered the extradition of Defendant to the United States. On May 28, 2004, the Court entered an order pursuant to 21 U.S.C. § 853(e)(4), directing Defendant to repatriate and deposit with the registry of the Court certain funds deposited in the ABN-AMRO Bank NV and Lombard Odier Hentsch Private Bank, both located in Gibraltar. These funds included all accounts in the name of Crake Limited, the Belar Trust, the Kendal Trust, the Trevi Trust, any other account in the name of the Belar, Kendal or Trevi Trust, and any other account in which Defendant is a signatory party, holder, owner, or beneficiary ("Gibraltar accounts"). The Order further restrained Defendant from taking any action that would serve to move or use these funds.

On November 10, 2004, the Court dismissed the claims asserted against Defendant for money laundering, Counts 73-88 of the Indictment. On February 28, 2005, the Court concluded a series of hearings related to Defendant's motion to vacate.

## II.   ANALYSIS

The Government asserts that the repatriation provision of 21 U.S.C. § 853(e) applies to Defendant. The Government further asserts that if § 853(e) does not apply to Defendant, the Court has authority to order repatriation pursuant to 18 U.S.C. § 1963(d). As discussed below, the Court finds that the provisions of § 853 do not apply to Defendant. The Court finds, however, that § 1963 does apply to Defendant, such that the Court's May 28 Order restraining Defendant from using or moving the funds and directing Defendant to repatriate the funds shall remain in effect.

Title 21, section 853(e) of the United States Code vests district courts with the authority to restrain property derived from money laundering crimes. See 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(e). Pursuant to the district court's authority to enter a pretrial restraining order under § 982,

> the court may order a defendant to repatriate any property that may be seized and forfeited, and to deposit that property pending trial in the registry of the court, or with the United States Marshals Service or the Secretary of the Treasury, in an interest-bearing account, if appropriate.

21 U.S.C. § 982(e)(4)(A). With respect to the district court's restraining power, the RICO counterpart to 21 U.S.C. § 982, 18 U.S.C. § 1963 provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section--
>
>> (A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or
>>
>> (B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that--
>>
>>> (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and
>>>
>>> (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:
>
> *Provided, however,* That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.
>
> (2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the

3

United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time, and prior to the expiration of the temporary order.

(3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

18 U.S.C. 1963(d)(1)-(3) (emphasis in original).

In the motion for an order directing Defendant to repatriate and deposit funds subject to seizure and forfeiture, the Government asserted that the "forfeiture count in this case charges that the defendants have an interest in property subject to forfeiture as both having been obtained in violation of RICO and having been involved in money laundering transactions." Mot. For Repatriation at 4. The Order at issue provides that Defendant and others who are in active concert with him are:

> **RESTRAINED, ENJOINED, AND PROHIBITED**, without prior approval of this Court and upon notice to the United States and an opportunity for the United States to be heard, from attempting or completing any action that would affect the availability, marketability or value of the [Gibraltar] accounts at the [Gibraltar] financial institutions, including but not limited to, transferring, assigning, pledging, distributing, giving away, withdrawing, wasting, secreting, spending, otherwise disposing of, or removing it from the jurisdiction of this Court. . . .

Order at pp. 1-2 (emphasis in original). The Order continues to state, "pursuant to the provisions of Title 21, United States Code, Section 853(e)(4), that upon receipt of this Order, [Defendant] shall immediately repatriate the contents of the [Gibraltar] accounts. . . ." Id. at 2.

On November 10, 2004, the Court dismissed the Counts of the Indictment asserting money

4

laundering offenses as to Defendant. In so ruling, the Court noted that the Sixth Circuit has recognized that the rule of specialty bars the prosecution of an individual for unextradited crimes. See United States v. Garrido-Santana, 360 F.3d 565, 578 (6th Cir. 2004). The Court reasoned therefore that, pursuant to the extradition agreement and the extradition treaty between the United States and Costa Rica, Defendant could not be detained, tried, or punished for the money laundering counts.

Based on the order dismissing the money laundering counts, it necessarily follows that Defendant's Gibraltar accounts cannot be restrained pursuant to 21 U.S.C. § 853. Section 853 provides for the forfeiture, seizure, restraint and repatriation of property in connection with money laundering offenses. Defendant is no longer charged with money laundering offenses. Accordingly, that portion of the Order premised on 21 U.S.C. § 853, requiring Defendant to repatriate the funds, is vacated.

The Government argues that the Court may order Defendant to repatriate these funds based on 18 U.S.C. § 1963(d). The Government relies on the language in the statute which provides that "the court may enter a restraining order. . . or take any other action to preserve the availability of property. . . ." 18 U.S.C. § 1963(d)(1). Courts must interpret statutes pursuant to their plain meaning, "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters,'" or when the statute is ambiguous. United States v. Steele, 933 F.2d 1313, 1317 (6th Cir. 1991) (citations omitted). Moreover, a criminal statute must be strictly confined within the fair meaning of its terms. Id. This does not mean, however, that "every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." Id. (citing United States v. Bramblett, 348 U.S. 503, 510

5

(1955)). The premise of this rule is that the Government must draft statutes to give full and fair notice of what the law intends. United States v. Monasterski, 567 F.2d 677, 681 (6th Cir. 1977).

The plain language of § 1963 authorizes district courts to take any action to preserve property that may be forfeited if the defendant is found guilty of a RICO offense. Naturally, this language must be construed such that courts do not act outside of the scope of what is constitutional. The statute does not prohibit courts from ordering repatriation. In fact, prior to the amendment of 21 U.S.C. § 853 adding the repatriation section, courts interpreted the exact language found in § 1963, i.e., "take any other action," to authorize repatriation. See e.g., United States v. Sellers, 848 F. Supp. 73 (E.D. La. 1994) (requiring the defendants to repatriate funds held in foreign bank accounts); United States v. Lopez, 688 F. Supp. 92 (E.D.N.Y. 1988) (requiring the defendants to execute a pretrial release and transfer of foreign funds that were subject to forfeiture). "[C]ourts consistently have construed the RICO forfeiture statute, 18 U.S.C. § 1963, and the statute governing drug-related forfeitures, 21 U.S.C. § 853, in *pari passu*." United States v. White, 116 F.3d 948, 950 (1st Cir. 1997).

Plaintiff contends that an inference exists that the authority to repatriate did not exist under § 853 before the amendment and does not now exist under § 1963 because Congress amended § 853 to authorize pretrial repatriation and did not also amend §1963. The Court does not find this argument availing, however, because those pre-amendment cases interpreting § 853 as permitting courts to order repatriation have not been overturned or abrogated. Moreover, the pre-amendment interpretation of 21 U.S.C. § 853 does not overstep the explicit language of § 853 or of 18 U.S.C. § 1963 nor does it conflict with constitutional mandates. The Court finds, therefore, that it is authorized to order the repatriation of property pursuant to 18 U.S.C. § 1963 in order to preserve

6

property subject to forfeiture.

Regardless of whether 18 U.S.C. § 1963 permits the Court to order Defendant to repatriate the funds in the Gibraltar accounts, the Court may restrain the funds pursuant to § 1963. Plaintiff asserts, however, that under these facts, pretrial restraint of the funds is not warranted. First, Defendant argues that the funds cannot be restrained because the accounts/assets were not listed in the Indictment. "The government is not required to list all forfeitable interests in the indictment, provided the indictment notifies defendants that the government will seek to forfeit all property acquired in violation of RICO." United States v. DeFries, 129 F.3d 1293, 1315 n.17 (D.C. Cir. 1997); see also United States v. Corrado, 227 F.3d 543, 551 (6th Cir. 2000); United States v. Sarbello, 985 F.2d 716, 721 (3d Cir. 1993); United States v. Strissel, 920 F.2d 1162, 1166 (4th Cir. 1990); United States v. Grammatikos, 633 F.2d 1013, 1024-25 (2d Cir. 1980). The Indictment in the instant case specifies a number of assets that the Government seeks for forfeiture. The Indictment further provides that the properties acquired by Defendant in violation of RICO "include but are not limited" to the specified assets. Indictment at p. 211. The Court finds that the Indictment sufficiently put Defendant on notice that the Government would seek the forfeit of the funds held in the Gibraltar accounts.

This conclusion is further supported by the hearings conducted related to the instant motion. At these hearings, Agent Pamela Vanderburg testified that the assets contained in the Gibraltar accounts were traceable to the accounts named in the Indictment, which were found by the grand jury as being subject to forfeiture. Agent Vanderburg indicated that the bank records establish that the funds contained in the Gibraltar accounts originated at IDM's headquarter's in Barbados. Through a series of transactions, approximately $7.2 million from IDM was eventually placed, at Defendant's

7

instruction, into an account at LGT Bank in Lichtenstein in the name of Adminstral Anstalt. The Adminstral Anstalt account is listed in the Indictment as being subject to forfeiture. Thereafter, $17 million from the Adminstral Anstalt account was transferred to the LGT Bank and placed in the Alpha Continental Trust. The money from the Alpha Continental Trust was then removed and eventually placed in the three trust accounts in Gibraltar.[1] The Court finds that the evidence is sufficient to establish that probable cause exists as to whether the Gibraltar accounts are forfeitable property.

Defendant also argues that the Government has failed to establish that Defendant is the owner of the accounts at Lombard Odier Hentsch Private Bank Limited. More specifically, Defendant asserts that he is not the beneficiary of the Kendal, the Belar, and the Trevi Trust accounts. Defendant maintains that the beneficiaries of the three trusts are his three children.[2]

"[T]he purpose of forfeiture statutes is to 'deprive criminals of the tools by which they conduct their illegal activities. . . . A failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate this intent.'" United States v. Henry, 64 F.3d 664, 665 (6th Cir. 1995) (citing United States v. 526 Liscum Drive, 866 F.2d 213, 217 (6th Cir. 1989)). "[U]nless [the] claimant [can] prove some dominion or control over the property, or some other indicia of true ownership, she [is] nothing more than a nominal or straw owner." Id. With respect to the Gibraltar accounts, the Government has established that Defendant exercised dominion and control over the

---

[1] Frank Olivier-Hay and Harry Gstohl, both of whom were involved in the handling of these funds, provided testimony related to their knowledge of the placement, handling and organization of these funds and Defendant's involvement therewith. Hay specifically testified that Defendant told him that the money placed in the Gibraltar accounts was the proceeds of selling lottery tickets by direct mail and telephone.

[2] Interestingly, the three Moss children are named Defendants in the instant action.

8

funds placed in the accounts. After placing the funds into the Gibraltar accounts, Defendant continued to exercise dominion and control over the accounts, including changing the beneficiaries of the accounts and transferring approximately $4 million from the trusts' assets to the account of Crake Limited. The Court finds that the Government has sufficiently alleged that probable cause exists that the three Moss children are nominal owners of the accounts.

Defendant further argues that his Due Process rights were violated because he did not receive notice and an opportunity to be heard as to the Government's motion. As discussed below, the Court finds that Defendant's Due Process rights were not violated by the Court's pre-notice/pre-hearing entry of the Order.

> [I]mmediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible [when]. . . "the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance."

Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 678 (1974) (citation omitted). The United States Court of Appeals for the Second Circuit has determined that the criminal forfeiture provision of § 853(e)(1)(A), much like the forfeiture provisions of § 1963, justifies the absence of a pre-restraining order hearing. United States v. Monsanto, 924 F.2d 1186, 1192 (2d Cir. 1991). In so ruling, the Monsanto Court reasoned:

> The full recovery of assets under the forfeiture provisions of section 853(e) serves several governmental and public ends, including: (1) "separating a criminal from his ill-gotten gains," Caplin & Drysdale, 109 S.Ct. at 2654; (2) obtaining substantial funds for furtherance of law enforcement, see id.; (3) permitting recovery of assets by their "rightful owners," id.; and (4) lessening the "economic power of organized crime and drug enterprises," id. In order to effectuate these purposes, the government needs some means of promptly heading off any attempted disposal of assets that

9

might be made in anticipation of a criminal forfeiture.

In a similar vein, the Court finds that the criminal forfeiture provisions of § 1963, in a case such as this, justify the post-indictment restraint of assets without notice or a hearing. Furthermore, even if Defendant was entitled to notice and a hearing, he has effectively received them given the hearings conducted related to the Government's motion and the Court's Order. Accordingly, the Court finds that the entry of the Order was and remains appropriate.

### III. CONCLUSION

For the aforementioned reasons, the Court vacates that portion of the Order that orders Defendant to repatriate the funds in the Gibraltar accounts pursuant to 21 U.S.C. § 853. The Court, however, amends the Order to require Defendant to repatriate and deposit the funds in the Gibraltar accounts pursuant to 18 U.S.C. § 1963. The Court further finds that the restraint provision of the Order shall remain in effect pursuant to 18 U.S.C. § 1963, pending the resolution of the instant action.

**IT IS SO ORDERED** this ___15th___ day of April, 2005.

BERNICE BOUIE DONALD
**UNITED STATES DISTRICT JUDGE**

10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 490 in case 2:02-CR-20165 was distributed by fax, mail, or direct printing on April 18, 2005 to the parties listed.

---

Dan Newsom
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Christopher E. Cotten
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Michael B. Neal
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Kemper B. Durand
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Glenn Reid
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Michael R. Koblenz
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, NY 10004--148

David W. Kenna
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, NY 10004--148

Richard M. Carter
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Robert W. Ritchie
RITCHIE FELS & DILLARD, P.C.
606 W. Main St.
Ste. 300
Knoxville, TN 37901

Stephen Ross Johnson
RITCHIE FELS & DILLARD, P.C.
606 W. Main St.
Ste. 300
Knoxville, TN 37901--112

Wade V. Davies
RITCHIE FELS & DILLARD, P.C.
606 W. Main St.
Ste. 300
Knoxville, TN 37901

David E. Wilson
MCKAY CHADWELL, PLLC
600 University
Ste 1601
Seattle, WA 98101

Robert G. Chadwell
MCKAY CHADWELL PLLC
600 University St.
Ste. 1601
Seattle, WA 98101

Honorable Bernice Donald
US DISTRICT COURT